## WILLIAM D. EVERITT and others *vs.* ROSINE EVERITT and others.

A testator, after giving directions as to the payment of his debts, the disposition of his business, the conversion of his estate into money, and investing the same on bond and mortage, and for the payment of certain legacies after the expiration of one year from the time of his death, by the 10th clause of his will, directed that the remainder of his estate, and the accumulations thereof, should be held, used and managed by his executors for the benefit of such of his three younger children, R., M. and A., as should be living at the time of his death. And if the said children should have attained the age of 21 years at the time of his decease, then his executors were to pay over the remainder of the funds, and all accumulations thereon, to his said three younger children or to the survivor of them, (if one of them should

Everitt *v*. Everitt.

then be dead,) in equal proportions, share and share alike. And if there should be but one survivor at the time of his decease, then the executors were to pay over the remainder of the funds, and all the accumulations thereon, to his said three younger children or to the survivors of them, (if one of them should then be dead,) in equal proportions, share and share alike. And if there should be but one survivor at the time of his decease, then the executors were to pay over to such survivor the whole of such funds, and the accumulations thereon. The testator then directed that if he should depart this life while any of the said younger children should be under the age of 21 years, the executors should hold, use and manage the said residue and remainder of the trust funds, as before provided, until all of his said three younger children, or the survivor or survivors of them, should become of age; and then he directed his executors to pay over such funds, and the accumulations, to them or to the survivors of them, in the same manner and in the same proportions as before provided in case of his not dying until after the youngest one living at the time of his decease should become of age. The testator died before either of the three younger children attained the age of 21.

*Held* that the trust created by the 10th clause of the will was of the entire estate, and not a trust of each of its three separate parts. And that the absolute power of alienation being by possibility suspended for a longer period than two lives, the whole limitation was void.

APPEAL from a judgment or decree entered at a special term. The action was brought by William D. Everitt, Euphemia Wallace and William J. Wallace, three of the children and heirs at law of Charles G. Everitt, deceased, against Rosine Everitt, Margaret Ann Everitt and Alice Everitt, three infant children and heirs of the deceased, and John A. Bryan, sole acting executor, to set aside the last will and testament of the said Charles G. Everitt. By the decree and judgment made at the special term it was declared that the tenth clause of the will created one entire trust of the whole estate, and not a separate trust for each of the three younger children of the testator, and was consequently illegal and void; and it was adjudged and determined that the testator died intestate as to the residue and remainder of his estate intended to be devised and bequeathed by the said tenth clause of the will. From this decree the defendants appealed.

*Jesse C. Smith,* for the plaintiffs.

*Wm. L. F. Warren,* for the defendants.

*By the Court,* BROWN, J.   In the case of *Paterson* v. *Ellis,*
(11 *Wend.* 260,) to which we were referred by the appellants'
counsel, upon the argument, there were two principal ques-
tions considered and determined by the court.   1st.  Whether
the legacy which was the subject of the controversy vested in
Mrs. Paterson.    2d.  Whether it was not divested by her
death under age and without lawful issue.   Upon the first
question the court determined that although the legacy was
not given in express words, it was given in substance, because,
1st. It was separated from the body of the testator's estate ;
2. It was to be invested at interest in the name of Mrs. Pa-
terson ; 3d. Guardians of her estate were appointed by the
will ; 4th. The interest was appropriated to her use, and was
to be invested for her benefit ; and 5th. The whole was to be
paid to her when twenty-one years of age.   Upon the second
question, the court determined that the legacy was not divested
by her death under age and without lawful issue ; because
the words of limitation imported an indefinite failure of issue
and created an estate tail at the common law, and as personal
estate could not be entailed, the first taker was held to have
the whole property.   It will be seen, from an examination of
the report of the case, that a gift of the income for support
and maintenance was only one of the circumstances from
which the intention to vest the principal might be inferred.
*Paterson* v. *Ellis* is distinguished from the present case by
the circumstances that it relates to a single legacy given to a
single person and invested in her name.   It furnishes no ex-
pression of opinion upon the subject of a trust for the benefit
of a class of persons, with limitations over to the survivor or
survivors in the event of either dying before 21 and without
issue.   The case of *Tucker* v. *Bishop,* (16 *N. Y. R.* 402,) to
which we were also referred, has less analogy to the present

case than that of *Paterson* v. *Ellis*. There the executors
were directed to invest the proceeds of the property in safe
and sufficient securities, "one half of which sum, principal
and interest, shall be for the benefit of the children of Jane
A. B. Tucker; and the other half, principal and interest, shall
be for the benefit of the children of Augustin B. Childs. The
executors were further directed to apply one half of the interest
and income, annually, for the benefit of the children of Jane
A. B. Tucker, and the other half to the children of Augustin
B. Childs; and whenever either of the children of the said
Jane shall come of age, my executors are to pay over to that
child her or his proportion of the one half of the principal;
and whenever either of the children of Augustin B. Childs
shall come of age, to pay to such child his proportion thereof,
and so till the whole principal and interest is paid out and ex-
pended." The court held this language to manifest a clear
intention to make a present bequest of the residue of the
estate; one half to the children of Tucker and the other half
to the children of Childs. That the bequest to each class was
due presently, though payable in future; and that the time of
the payment did not postpone the vesting of the legacy, be-
cause it was not of the substance of the gift. That the period
of the distribution of each moiety was the time when the eld-
est child of each class became of age; and all children born
intermediate that time and the time of the death of the testa-
tor were entitled to share in the fund. That "the uncertainty
of the quantity of the interest of the children *in esse* at the
death of the testator, growing out of the possible diminution
of their shares, by subsequent births, could not have the effect
of suspending the power of alienation. Whatever interest the
children *in esse* at the death of the testator had in the fund
at any time prior to the majority of the child who first at-
tained 21, whether diminished in quantity by augmentation
of the numbers of the class, or not, was susceptible of alienation
by next friend or guardian acting under an order of the court."
Here also, although the fund was given to a class, there was

no limitation over to survivors, and no uncertainty in respect to the right of the children in being at the time of the death of the testator to take the estate, although the extent of their interests might be diminished by the births intermediate the death of the testator and the time when the eldest of each class attained the age of 21.

In the present case, the testator, in the first nine clauses of his will, gives directions in regard to the manner of the interment of his body, the payment of his debts and the disposition to be made of his business, in respect to the conversion of his estate into money, and investing the same at interest upon bond and mortgage. And after the expiration of one year from the time of his death, his executors are required to pay from the property certain legacies to his relatives and employees. By the 10th clause, he directs that the remainder of his estate, and the accumulations thereof, shall be held, used and managed by his executors for the benefit of such of his three younger children, Rosine Everitt, born June 7th, 1842, Margaret Ann Everitt, born January 18th, 1850, and Alice Everitt, born October 4th, 1851, as shall be living at the time of his death. And if the said children should have attained the age of 21 years at the time of his decease, then his executors were to pay over the remainder of the funds, and all accumulations thereon, to his said three younger children or to the survivors of them, (if one of them shall then be dead,) in equal proportions, share and share alike; and if there should be but one survivor at the time of his decease, then the executors were to pay over to such survivor the whole of such funds and the accumulations thereon. The testator died on the 7th July, 1856, and by reference to the ages of the children it will be seen that the contingency referred to in this passage never happened, for the testator died before either of the children attained the age of 21. He then proceeded to direct, that "if I shall depart this life while any of the said younger children shall be under the age of 21 years, it is my will, and I do direct my said executors to hold, use and man-

age the said residue and remainder of the said trust funds, as hereinbefore provided, until all of my said three younger children, or the survivor or survivors of them, shall become of age. And then it is my will, and I do direct my said executors to pay over such funds, and the accumulations, to them or to the survivors of them, in the same manner and in the same proportions as above provided, in the case of my not departing this life until after the youngest one living at the time of my decease should become of age." It is to be observed that the trust was of the entire residue and remainder of his estate, and not of the separate parts of such residue and remainder, and that it was not separated and invested in the name of the *cestuis que trust*, as in the case of *Paterson* v. *Ellis*, but was invested in one mass in the name of the executors. Nor were the shares of each of the children to be paid to them as they respectively attained the age of 21 years, as in the case of *Tucker* v. *Bishop;* but the entire trust fund was to be retained in the hands and in the name of the trustees until all the children, or such as survived, attained the age of 21 years, and then it was to be distributed to the survivors. In a subsequent part of the will he enjoins it upon his executors to apply the income arising from the trust property to the support, education and maintenance of each and every such minor during her minority ; and if the income proves insufficient for that purpose, they are to resort to the principal of the fund, to the end that there shall be no failure under this provision of the will. These expenditures are expressly charged upon the trust fund generally, and not against the shares of such minors separately. In another and subsequent part of the will he also directs that if any of such children should die before she shall become entitled to be paid in full the amount coming to her for her share, and shall leave lawful issue, her share shall immediately belong to and go to such issue; but if she shall die without such issue, then her share shall go to the survivor of his said three youngest children. The effect of this limitation is to create an additional obstacle to the

alienation of the estate during the minority of either of the *cestuis que trust,* for neither of them, separately, had a vested estate until all attained the age of 21 years, or those within that age had died without lawful issue. And all together were not vested with the entire estate and in a condition to alien until the event before mentioned had happened; because, upon the death of either under 21 leaving lawful issue, and before she became entitled to be paid in full, such issue would take under the limitations to which I have just referred. It is impossible, I think, in the face of these provisions, to doubt that the trust created by the 10th clause of the will is of the entire estate, and not a trust of each of its three separate parts; for although the shares of the children are spoken of and referred to in various parts of the clause, such expressions evidently mean the shares to which the children may be entitled upon the happening of the event which vests the estate. "The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the time of the creation of the estate," except in the single instance referred to in the 16th section of the act, in regard to the nature and qualities of estates and the alienation thereof. If the limitation be such that by possibility it may create a suspension beyond the time mentioned in the 15th section, it is void; for the limitation must be such that it must take effect within the prescribed period, or it is void. When an executory devise is limited as an event which may not happen within the period above mentioned, as upon a general failure of heirs or issue, it is void; nor is it material in such case how the fact actually turns out; for the possibility, at the creation of such executory limitation, that the event upon which its existence depends may exceed in point of time the limits allowed by law, vitiates it *ab initio.* (*Cruise, title Devise, ch.* 17, § 22.)

The power of alienation can be suspended in no other way than that recognized in the 15th section of the act. It "cannot be suspended for a moderate terms of years, for an

Everitt *v.* Everitt.

average duration of lives, whilst certain specified minorities continue, or by any other limitation that may possibly extend such suspension beyond two specified lives in being." By the 10th clause of the present will, the trust was to continue until the three minor children attained their majorities. If two should die before all attained their majority, then the estate, having been held for two lives, its further continuance during the residue of the other minority extends it beyond two lives, and the whole limitation is void. This is the reason given for the judgment of the late court of errors upon a similar question in *Hawley* v. *James*, (16 *Wend.* 61,) and I think it applies with like force to the limitation of the 10th clause of the present will.

It was thought by the counsel for the appellants that the direction to the executors in their discretion to make advances to Rosine and Margaret, in anticipation of, and on account of, their respective shares, and to all the children for marriage portions, was evidence of an intention to vest the estate in separate shares in each of the children. It is to be observed that the advances to Rosine and Margaret are only to be made after they have respectively attained the age of 21 years, and the other advances are to be made in the event of marriage, before they become entitled to their shares of the fund. The advances are to be made, not out of the shares of the persons to whom they are made, but from the fund generally, in anticipation and as a part of the share. At most, it is but a power in a certain event, and for a short period, and to the extent of a small amount, to anticipate the time of the vesting and distribution of the property. It cannot affect the principal question, or remove the objectionable character of the trust.

I think the judgment of the special term should be affirmed.

Judgment affirmed.

[KINGS GENERAL TERM, February 14, 1859. *Lott, Emott* and *Brown,* Justices.]